IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Case No. 15-22161-GLT |
| ROBERT ANTHONY BRUNO and BARBARA WISE BRUNO, | Chapter 13 |
| Debtors. | Related to Dkt. Nos. 38, 46, 48, 54, 60, 68 |
| ROBERT ANTHONY BRUNO and BARBARA WISE BRUNO, | |
| Movants, | |
| v. | |
| BEACON SALES ACQUISITION, INC. d/b/a CASSADY PIERCE COMPANY, MCCLURE-JOHNSTON COMPANY, NORTH COAST COMMERCIAL ROOFING SYSTEMS, | |
| Respondents. | |

## MEMORANDUM OPINION

Bryan P. Keenan, Esq., Counsel to the Debtors, Robert and Barbara Bruno

David Abrams, Esq., Counsel for Beacon Sales Acquisition, Inc.

Before the Court are two related matters. Beacon Sales Acquisition, Inc. ("BSAI")[1] filed an objection to the exemptions claimed by the Debtors, Robert Anthony Bruno and Barbara Wise Bruno, in certain real and personal property. The Brunos oppose the objection and also filed an objection to BSAI's proof of claim in which they assert that BSAI holds no cognizable claim and thereby lacks standing to challenge their exemptions. After an initial

---

[1] For the purposes of this Opinion, the Court will utilize the term "BSAI" as it was defined by its counsel to include Beacon Sales Acquisition, Inc. d/b/a Cassady Pierce Company, McClure-Johnston Company, and North Coast Commercial Roofing Systems.

hearing on these matters, the Court upheld the Brunos' claimed exemption on their residential property but deferred any remaining decisions pending the receipt of additional briefing from the parties. BSAI thereafter filed a motion seeking reconsideration of the Court's order authorizing the exemption on the residential property (the "Reconsideration Motion").

# I.

Mr. Bruno was the president and a director of Certified Home Rebuilders, Inc. ("Certified"), a home remodeling business based in Carnegie, Pennsylvania. On February 14, 2015, Certified filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code").

Cassady Pierce, a trade name of BSAI, was listed on Certified's bankruptcy schedules as having a trade claim of $19,550.[2] Although BSAI did not file a proof of claim or otherwise appear in that case (though it was not required to do so), there is no dispute that BSAI received notice of Certified's bankruptcy.[3]

Certified's bankruptcy case progressed uneventfully. After conducting a meeting of creditors, the chapter 7 trustee for Certified's bankruptcy estate filed a report of no distribution and the case was closed upon the issuance of a final decree on September 16, 2015.[4]

The collapse of Certified's business seemingly caused the Brunos to commence their own bankruptcy case. On June 24, 2015, they filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code.

---

[2] Case No. 15-20464, Dkt. No. 9 (Schedule F).

[3] Case No. 15-20464, Dkt. No. 11.

[4] Case No. 15-20464, Dkt. Nos. 27-29.

The Brunos disclosed interests in two parcels of real property on their bankruptcy schedules. The first is their marital residence in Pittsburgh (the "Residential Property"), which is held by Mr. and Mrs. Bruno as tenants by the entireties.[5] The Brunos also hold, as tenants by the entireties, a ½ interest in a commercial property located in Carnegie, Pennsylvania (the "Commercial Property").[6] The Brunos elected to exempt their interest in both parcels pursuant to 11 U.S.C. § 522(b)(3)(B).[7]

Among their debts, the Brunos identified over $128,000 in unsecured non-priority claims, consisting of approximately $20,000 in joint debt with the remaining portion attributable either to Mr. Bruno ($98,000) or Mrs. Bruno ($10,000) individually.[8] Mr. Bruno also identified creditors holding disputed claims in excess of $548,000 stemming from trade debt incurred by Certified. Mr. Bruno contends that he is not liable for these amounts because he did not execute a personal guaranty in favor of each affected creditor.[9] BSAI is included among those creditors with claims attributable to Certified. It was scheduled as having a disputed claim against Mr. Bruno in the amount of $19,550.23.[10]

BSAI filed a proof of claim against the Brunos which alleges that, between September 14, 2014 and February 6, 2015, Certified purchased approximately $20,000 in

---

[5] Dkt. No. 18 (Schedule A).

[6] Id. The other ½ interest is held by Robert Andrew Bruno and his wife, Adrienne Bruno.

[7] Id. (Schedule C). The exemption on the Residential Property was valued at $252,629 based on a stated value of $400,000 and secured claims totaling $147,371. As to the Commercial Property, the Brunos claim an exemption of $8,313.55. They value their ½ interest at $130,000 and identify $243,372.91 in secured claims against the property.

[8] Id. (Schedule F).

[9] Id. Each claim allegedly attributable to Certified was listed as "contingent," "unliquidated," and "disputed," and was not included in the final tally of unsecured claims.

[10] Id.

building materials from BSAI, ostensibly for work to be performed on residential or commercial projects. BSAI alleges that it was never paid for those materials and contends that Mr. Bruno is obligated to repay under an undefined theory of "officer/director/shareholder liability."[11]

BSAI timely objected to the exemptions claimed in the Residential and Commercial Properties on the basis that the Brunos may not assert a homestead exemption in those assets. BSAI also objected to various exemptions in personal property on the grounds that they exceeded the maximum allowance under Pennsylvania exemption law.[12] In response, the Brunos denied that they were seeking a homestead exemption on the real property and, instead, asserted that the claimed exemptions were appropriate under section 522(b)(3)(B) as the property was held as tenants by the entireties.[13]

The Brunos also filed an objection to BSAI's claim and maintain that it lacks standing in this case. The Brunos contend that they owe no money to BSAI because the alleged debt was incurred by Certified and they did not provide a personal guaranty to BSAI. The Brunos also argue that the debt is not jointly assertable against both debtors because Mrs. Bruno was never a director, officer, or shareholder of Certified.[14] In response, BSAI concedes that it has no claim against Mrs. Bruno,[15] but it contends that a viable "deepening insolvency" claim

---

[11] Claim 15-1.

[12] Dkt. No. 38. BSAI also objected to confirmation of the Brunos' chapter 13 plan on the same grounds. Dkt. No. 34.

[13] Dkt. No. 46.

[14] Dkt. No. 48.

[15] See Hr'g Tr. 7:24—8:1 (Nov. 18, 2015), Dkt. No.63.

exists against Mr. Bruno which makes him personally liable to unpaid creditors for his actions while serving as a director and officer of Certified.[16]

After hearing arguments on both objections, the Court found no basis to deny the exemption in the Residential Property or in certain joint bank accounts, but it sustained the objection as to a checking account held exclusively by Mrs. Bruno because it was not shown to be entireties property.[17] The Court deferred ruling on the remaining issues pending the receipt of additional briefs from the parties.[18]

As the parties submitted their briefs, BSAI filed a motion seeking reconsideration of this Court's Order upholding the exemption of the Residential Property under section 522(b)(3)(B).[19] BSAI argues that such a decision was contrary to decisional authority and it seeks relief under Fed. R. Bankr. P. 9024 (incorporating Fed. R. Civ. P. 60(b)(6)).

The dispute is now ripe for adjudication. The Court has jurisdiction over these matters under 28 U.S.C. § 1334 and 157(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B).

## II.

BSAI claims to have supplied Certified with materials worth approximately $20,000 for which it has not been paid. Since it did not receive a distribution in Certified's bankruptcy case, BSAI now asserts a claim against Mr. Bruno directly for the unpaid sums.[20]

---

[16] See Dkt. Nos. 54, 63.

[17] See Dkt. No. 60.

[18] Id.; see also Dkt. No. 63.

[19] Dkt. 68.

[20] Although BSAI's proof of claim was ostensibly filed against both debtors, BSAI's counsel acknowledged that it had no claim against Mrs. Bruno. See note 15, *infra*.

BSAI contends that as a director and officer of Certified, Mr. Bruno is personally liable under the theory of deepening insolvency for debts incurred by the corporation for which he had reason to know it could not repay because of its insolvency. Mr. Bruno argues that deepening insolvency is not a viable cause of action under Pennsylvania law and he invites this Court to reject the claim outright.

Pennsylvania has yet to formally recognize a cause of action for deepening insolvency, but the United States Court of Appeals for the Third Circuit predicted that, if confronted with the issue, the Pennsylvania Supreme Court would find it to be a cognizable injury.[21] Although the continued vitality of the legal theory has been heavily scrutinized in recent years,[22] our Court of Appeals has refused to abandon its recognition of "deepening insolvency" as a viable cause of action.[23] As this Court is bound to follow Lafferty and its progeny, the BSAI claim cannot be denied simply because deepening insolvency has yet to be recognized by the Pennsylvania Supreme Court.

---

[21] Official Comm. of Unsecured Creditors v. R. F. Lafferty & Co., Inc., 267 F.3d 340, 349 (3d Cir. 2001).

[22] It is not within this Court's province to predict the future, but it appears that at least four circuit judges believe the "deepening insolvency" doctrine may not survive another en banc appellate review:

> [M]uch has changed in the acceptance of deepening insolvency since Lafferty. What had appeared to our Court then to be a plausible argument gaining increasing acceptance has since been widely repudiated.
> \*   \*   \*
> [W]hile the Pennsylvania Supreme Court has not weighed in on the topic, there is reason to believe that our prediction in Lafferty about the acceptance of deepening insolvency as a cause of action under Pennsylvania law has been undermined and ought to be reconsidered.

Lemington Home for the Aged v. Baldwin, 781 F.3d 675, 676-77 (3d Cir. 2015) (Jordan, Ambro, Rendell, Krause, JJ. concurring) ("Lemington III").

[23] In re Lemington Home for the Aged, 659 F.3d 282, 290 (3d Cir. 2011) ("Lemington I"); In re Lemington Home for the Aged, 777 F.3d 620, 630 n. 2 (3d Cir. 2015) ("Lemington II") ("[W]e continue to be bound to follow Lafferty unless it is overturned by our Circuit sitting en banc."); Seitz v. Detweiler (In re CitX Corp.), 448 F.3d 672, 680 (3d Cir. 2006) (holding that, until reexamined by an en banc court, "we cannot revisit the correctness of that interpretation of Pennsylvania law."); see also In re Merck & Co. Sec. Litig., 432 F.3d 261, 274 (3d Cir. 2005)).

The Brunos alternatively argue that BSAI fails to allege the elements necessary to establish a deepening insolvency claim. To prevail on such a claim, the claimant must demonstrate that the director's actions proximately caused injury to the corporate entity by deepening an already-existing insolvency.[24] It is also necessary to demonstrate fraud on behalf of the director as "a claim of negligence cannot sustain a deepening-insolvency cause of action."[25] The fraud requirement may be satisfied with proof that corporate life was fraudulently extended or the incurrence of additional debt was fraudulently concealed.[26] The Brunos claim that BSAI failed to allege any fraud on the part of Mr. Bruno, thereby precluding any recovery against him for Certified's corporate debt.

The elements of a deepening insolvency claim are indeed important, but the Brunos' focus misses the fundamental nature of a deepening insolvency cause of action. Namely, the claim aims to redress injuries sustained by the corporate debtor and thereby inherently belongs to the corporate entity. As explained by the Third Circuit, "'deepening insolvency' in Pennsylvania is 'an injury to [a debtor's] corporate property from the fraudulent expansion of corporate debt and prolongation of corporate life.'"[27] To the extent a deepening insolvency claim exists, the corporation possesses the right to sue because it is the corporate body that was damaged.[28]

---

[24] Lemington I, 659 F.3d at 294 (citing CitX Corp., 448 F.3d at 677); see also In re Zambrano Corp., 478 B.R. 670, 689 (Bankr. W.D.Pa. 2012) ("it is necessary to demonstrate that the [debtor] was insolvent and that [the director] proximately caused the [debtor] to take on more debt resulting in injury to the creditors.").

[25] Lemington I, 659 F.3d at 294 (citing CitX Corp., 448 F.3d at 681).

[26] CitX Corp., 448 F.3d at 680-81.

[27] Lemington II, 777 F.3d at 630 (citing Lafferty 267 F.3d at 347).

[28] Lafferty, 267 F.3d at 348.

7

The question presently confronting the Court is whether a creditor may bring a deepening insolvency claim for its own benefit. In the absence of a direct pronouncement from the appellate courts in Pennsylvania, this Court finds that it cannot. Creditors lack the capacity to pursue a direct cause of action for deepening insolvency because the "injury to the corporate body is legally distinct from an injury to another person."[29] As it is the corporation that sustains an injury, a deepening insolvency cause of action is held by the corporation and must be pursued either directly by the corporation or derivatively in the name of the corporation.[30] It cannot be asserted as an injury to a particular creditor.

Although the definition provided in Lafferty would seem, by itself, to preclude a direct claim by creditors, the Court will also look to analogous state law for guidance.[31] A claim for breach of a director's fiduciary duty is strikingly similar to a deepening insolvency claim. Both actions seek redress for damages caused by the directors' conduct, and they are often brought together as alternative claims for relief. Without suitable Pennsylvania authority defining the contours of deepening insolvency, the Court considers fiduciary duty claims to be a suitable substitute for the purpose of examining who holds the right to pursue a deepening insolvency claim.

Under Pennsylvania law, corporate directors owe fiduciary duties to the corporation and its shareholders.[32] When the corporation is insolvent, the directors also owe

---

[29]    Id.

[30]    A bankruptcy trustee similarly has standing to assert deepening insolvency claims belonging to its bankrupt debtor as of the date the bankruptcy was commenced. Stanziale v. Pepper Hamilton LLP (In re Student Finance Corp.), 335 B.R. 539 (D. Del. 2005).

[31]    A determination as to whether claims belong to the debtor or its individual creditors is one that turns on state law. Lafferty, 267 F.3d at 348 (citing Hirsch v. Arthur Anderson & Co., 72 F.3d 1085, 1093 (2d Cir. 1995)).

[32]    15 Pa. C.S.A. §§ 512(a), 1712(a); Lemington I, 659 F.3d at 290.

fiduciary duties to the corporation's creditors.[33]  In the event of a breach of these fiduciary duties, the right to enforce is directed by statute.  Section 1717 of the Pennsylvania Business Corporation Law provides that an action for breach of fiduciary duty may only be brought by the corporation directly, or in the alternative, indirectly by a shareholder through a derivative action brought on behalf of the corporation.[34]  A shareholder, creditor, or any other person or group is prohibited from bringing a direct action against the directors for a breach of their fiduciary duties.[35]

Through this context, standing to bring a direct claim against a director exists only if the claimant sustained a personal injury which is independent of any injury suffered by the corporation.[36]  If the creditor's alleged injuries cannot be readily distinguished from those of the corporation, it does not give rise to a separate cause of action.  To make this determination, the court examines the nature of the allegations and the relief available to the claimant if it prevails:

> The action is derivative if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock or property without any severance or distribution among individual holders, or if it seeks to recover assets for the corporation or to prevent dissipation of its assets … if damages to a shareholder result indirectly, as the result of an injury to the corporation, and not directly, the shareholder cannot sue as an individual.[37]

It is not enough to establish that a recovery will yield a benefit to the creditor.  To the contrary, a direct claim requires proof that the creditor's injury is unique and unrelated to any damage

---

[33]  Id.

[34]  In re Forman Enters, Inc., 281 B.R. 600, 610 (Bankr. W.D. Pa. 2002); 15 Pa. C.S.A. § 1717.

[35]  Id.  As noted above, a bankruptcy trustee does not fall within this exclusion when the claim is brought on behalf of the corporate debtor.  See note 30, infra.

[36]  Hill v. Ofalt, 85 A.3d 540, 548 (Pa. Super. Ct. 2014).

[37]  Id., 85 A.3d at 549 (citing 12B FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS § 5911 (2013)).

sustained by the corporation or other creditors. In a liquidation, the mere fact that a successful outcome may increase the amount available for distribution to creditors does not transform a claim that otherwise belongs to the corporation into one that can be separately maintained by each creditor.[38] As deepening insolvency claims of the type alleged by BSAI involve injuries to the corporate entity, there is no corresponding claim available for creditors to pursue.[39]

In this case, BSAI attempts to cast its proof of claim as a direct claim against Mr. Bruno for the unpaid goods supplied to Certified. While the claim portrays damages specific to BSAI, the actual injury asserted – the alleged "deepening insolvency" – is not a personal injury of the creditor. To the extent the directors may have caused an insolvent Certified to incur excessive debt and fraudulently induced suppliers to continue extending credit, the injury belongs to Certified. Certified is the entity that was damaged if the debt on its balance sheet was artificially inflated beyond any reasonable parameters. And it was Certified's inability to service this debt which caused the concomitant and indirect injury to BSAI and its fellow creditors who remained unpaid. As the claim represents a generalized injury, the recovery must likewise

---

[38]    See Lafferty, 267 F.3d at 349; see also Burdon v. Erskine, 401 A.2d 369, 370 (Pa. Super. Ct. 1979).

[39]    This conclusion is consistent with the prevailing law in other jurisdictions. As claims for deepening insolvency assert a generalized injury not specific to individual creditors, some courts have held that such claims properly belong to the corporation, or more commonly, the trustee appointed in the corporation's bankruptcy case. Cohain v. Klimley, 2010 WL 3701362 (S.D.N.Y. Sept. 20, 2010) aff'd, Sissel v. Rehwaldt, 519 Fed. Appx. 13 (2d Cir. 2013); see also In re Schimmelpenninck, 183 F.3d 347, 359 (5th Cir. 1999) (holding that actions by creditors asserting a generalized injury to the debtor's estate which ultimately affect all creditors belong to the trustee); In re Folks, 211 B.R. 378, 387 (B.A.P. 9th Cir. 1997) (claims asserting general injury to all creditors belong to the estate and the trustee).

When novel issues arise under Pennsylvania corporate law, the corporate law of Delaware is often consulted for guidance. Under Delaware corporate law, creditors of an insolvent corporation are precluded from asserting direct claims against the corporate directors for a breach of their fiduciary duties. Instead, creditors may pursue derivative claims on behalf of the insolvent corporation or they may assert any nonfiduciary claims. North American Catholic Educ. Programming Found., Inc. v. Gheewalla, 930 A.2d 92, 103 (Del. 2007). In reaching this result, the Delaware Supreme Court sought to avoid the uncertainty that might exist if directors were forced to balance the competing fiduciary duties owed to the corporation, the creditor body as a whole, and the specific demands of individual creditors. Id.

remain available for Certified and its entire creditor constituency and cannot be commandeered for the exclusive benefit of only the most vociferous creditor.

In sum, BSAI has failed to establish a viable claim against the Brunos. It admittedly did not have a contractual relationship with the Brunos that might personally obligate them for the goods supplied to Certified. BSAI also did not advance any other legal theory of recovery aside from its deepening insolvency claim. Because a deepening insolvency claim may only be pursued by the injured corporation or derivatively on its behalf, and since BSAI does not otherwise hold a direct claim against the Brunos, the BSAI claim is not sustainable and must be denied as a matter of law.

### III.

The Brunos contend that upon denial of BSAI's claim, it no longer possesses standing to contest their claimed exemptions. Standing is a prerequisite for subject-matter jurisdiction, and requires a party to allege an actual case or controversy.[40] Whether a person has standing from a "case or controversy" perspective turns on whether the party has a sufficient "personal stake in the outcome of the controversy as to warrant" the invocation of federal jurisdiction.[41] To satisfy the standing requirements imposed by Article III of the U.S. Constitution, a party must show:

    (1)    it has suffered an "injury in fact" that is

        (a)    concrete and particularized and
        (b)    actual or imminent, not conjectural or hypothetical;

    (2)    the injury is fairly traceable to the challenged action of the defendant; and

---

[40] O'Shea v. Littleton, 414 U.S. 488, 493-94 (1974).

[41] Crawford v. Hertzberg (In re Hertzberg), 2014 WL 6382951, at *3 (Bankr. W.D. Pa. November 13, 2014).

(3)  is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.[42]

The denial of BSAI's claim deprives it of standing in this bankruptcy case. Aside from the standing that would arise from a valid claim, BSAI asserts no other basis by which it would have standing to be heard in these matters.

Simply stated, there is no case or controversy here between the Brunos and BSAI. To the extent that there might have been a controversy at some point, it was limited to the dispute between Certified and BSAI. Certified is not now before this Court, and the Court cannot presently redress any injury to BSAI allegedly caused by Certified.[43] In other words, whatever injury BSAI now alleges is not "fairly traceable to the challenged action" of the Brunos.

### IV.

Based on the foregoing, the objection to BSAI's claim is SUSTAINED. As BSAI lacks standing to challenge the Brunos' claimed exemptions, its objection to the exemptions and its Reconsideration Motion are not well taken and are hereby DENIED.[44]

An appropriate order will issue.

Dated: June 30, 2016

GREGORY J. TADDONIO
UNITED STATES BANKRUPTCY JUDGE

---

[42] Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000).

[43] Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26, 41-42 (1976) ("...the 'case or controversy' limitation of Art. III . . . requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court.").

[44] Even if the Court were to examine the Reconsideration Motion on the merits, it is clearly an attempt at a second bite of the apple. BSAI provided no new arguments, no new evidence, no change in prevailing law, no argument based on manifest injustice, but simply repeated the arguments the Court had previously considered and rejected. In light of these considerations, BSAI certainly did not establish the "extraordinary circumstances" required for review under Fed. R. Civ. P. 60(b)(6).

<u>Case administrator to mail to:</u>
Debtors
Bryan P. Keenan, Esq.
David Abrams, Esq.